GARNER, SECRETARY OF AGRICULTURE AND COMMERCE, v. DELTA COTTON OIL Co.*

(Division A. April 26, 1926.)

[108 So. 149.   No. 25612.]

AGRICULTURE. *Commissioner of agriculture held without authority to refuse registration of trade-mark, brand, and tag of fertilizer because of applicant's past violations of law (Laws 1912, chapter 138, sections 2, 4-8, 20).*

Under Laws 1912, chapter 138, commissioner of agriculture was without authority to refuse to grant registration of trade-mark, brand, and tag of fertilizer manufacturer, or to provide tags in conformity with section 8, after tender of fee required by section 2, on ground that applicant in past had violated provisions of sections 4-7, relative to percentage of various constituent parts of product, since section 20 of the act provides its own penalty for failure to comply with its requirements.

*Corpus Juris-Cyc References: Agriculture, 2CJ, p. 1000, n. 76 New.

APPEAL from circuit court, of Hinds county, first district.

HON. W. H. POTTER, Judge.

Application for mandamus by the Delta Cotton Oil Company against P. P. Garner to compel respondent, as

Secretary of Agriculture and Commerce, to register plaintiff's trade-mark, brand, and tag. From a judgment directing that mandamus issue, respondent appeals. Affirmed.

*J. L. Byrd,* Assistant Attorney-General, for appellant.

The Delta Cotton Oil Company filed a petition for a writ of mandamus against P. P. Garner, Commissioner of Agriculture and Commerce, seeking to have the defendant register the names and brands of certain products; to-wit, cotton seed meal, to be manufactured and sold by the Delta Cotton Oil Company during the year 1926. The defendant defended his action on the ground that the Delta Cotton Oil Company in the past has registered its meal, certifying a content which samples taken from the meal from time to time failed to show, and that this action of the Delta Cotton Oil Company was done for the purpose of placing on the market an inferior grade of meal and charging therefor a price which was the price for meal of the guaranteed content supposed to be in the Delta Cotton Oil Company's product. The commissioner claims his authority to refuse registration under the provisions of chapter 138, Laws of 1912, and especially under the last sentence of section 1 of the Act, wherein the commissioner is given the power to refuse to receive or register the guaranteed analysis of any fertilizer under a name, brand or trade-mark which would be misleading or deceptive, or which would tend to mislead or deceive the purchaser as to the actual character of such fertilizer or fertilizing material. The commissioner's position is that the conduct of the Delta Cotton Oil Company, as shown by the record, has been such that its product has been practically all of the time less in nitrogen content than its analysis, and that this action on the part of the Delta Cotton Oil Company was not corrected when brought to its attention, but was persisted in by this company; and that instead of attempting

to correct the wrong, the Delta Cotton Oil Company challenged the commissioner to proceed in the courts.

We do not think it will do to say that the statute provides for criminal punishment and, therefore, the commissioner should take that procedure. We think the commissioner was within his rights and it was his duty to refuse to issue the certificate and permit the registration on the showing made. The record shows a number of instances where samples of this company's product were taken, and analyzed and each of them showed that the nitrogen content was below the minimum fixed in the analysis.

The law was passed for the purpose of prohibiting the selling of inferior grades of products at a price at which the superior grades should be sold, and the acts of the Delta Cotton Oil Company, as shown by the record, were in direct contravention of this statute.

We are unable to find any case where this statute has been construed, but we believe that it was the intent of the legislature to protect the farmers by requiring that these analyses submitted to the commissioner should be a *true index* of what the future sales would be as to quality and that the persistent violation of this guaranteed analysis would be sufficient to warrant the commissioner's refusal to register the analysis and then permit the sale under it.

*Green, Green & Potter,* for appellee.

Appellant bases his case squarely upon the last sentence of section 1, Acts of 1912, reading as follows: "It is also provided that the state chemist and the commissioner of agriculture and commerce shall have the power to refuse to receive or register the guaranteed analysis of any fertilizer, under a name, brand, or trade-mark, which would be misleading or deceptive or which would tend to mislead or deceive the purchaser as to the actual character of such fertilizer or fertilizing material."

In connection with this the court will bear in mind that under section 5, Act of 1912, there are only two brands under which cotton seed meal can be sold in this state; to-wit, "high grade," which shall contain not less than seven per cent nitrogen, and "prime," which shall contain not less than six and eighteen-hundredths per cent nitrogen. The brands under which cotton seed meal can be sold are those fixed by law, and a producer or seller thereof cannot sell in Mississippi under any other brands than those specified.

It is, therefore, manifest that the commissioner has no power to refuse to receive and file a brand for cotton seed meal, for no prospective purchaser of cotton seed meal can be deceived as to what he is proposing to get under a brand of cotton seed meal. In addition to this, the act is highly penal, and carries with it its own penalty for disobedience thereof, providing that for any violation, upon conviction thereof, the violator shall be fined not less than fifty dollars and not more than one hundred dollars for each offense.

It is "horn book" law that where a statute fixes a penalty for violation of same, that this is the exclusive penalty and no other penalty can be inflicted. *Young* v. *State Life Ins. Co.,* 91 Miss. 710, 45 So. 706; *Huddleston* v. *McMillan Bros.,* 112 Miss. 186, 72 So. 892. The general rule is that penal laws should be strictly construed; hence, it follows necessarily that where the legislature has failed to give power expressly to stop the manufacture to the commissioner, the court will not extend by implication the plain meaning of a law so as to give him this power.

It is not contended that any meal that was to be manufactured or sold under a permit and tax tag requested showed any deficiency, but merely because three times a year there had been a lack of ammonia that this would allow the commissioner to bar the products of appellee from sale within the state.

The act of the secretary in refusing to receive and file the guarantee and issue the tax tags required by the statute was, at least insofar as this record goes, purely an arbitrary act on his part.

McGOWEN, J., delivered the opinion of the court.

The Delta Cotton Oil Company, a Mississippi corporation, filed a petition for *mandamus* against P. P. Garner, secretary of agriculture and commerce for the state of Mississippi. Briefly stated, the plaintiff sought to have Garner, secretary of agriculture and commerce, register the trademark, brand, and tag of the plaintiff for the years 1925 and 1926 as provided for in chapter 138, Laws of 1912, alleging that it had made its application in conformity with such chapter and tendered the fees required to be paid for such service to be performed by said secretary of agriculture and commerce. The petitioner alleged that he had complied with all the requirements of said chapter, and that said Garner refused to register its said brand of fertilizer or to provide the tags in conformity with the statute.

Upon the trial of the cause the said Garner, secretary of agriculture and commerce, defended on the ground that in past years quite a number of samples of this product produced by this company had been examined by the state chemist, and that the report of the state chemist disclosed that this company had sold a product that contained a less percentage of nitrogen than required by law and as shown by the printed guaranty required to be placed upon the packages or bags of the product; in other words, that more than a dozen samples in the past few years of this company's products had disclosed a violation of the law, and that for that reason he had refused and did refuse to register the brand and issue the tags.

The court below held with the plaintiff, directing that the mandamus issue as prayed for, requiring Garner

to receive and file according to the statute (chapter 138, Laws of 1912), on a form to be supplied by him, the name of the brand of the cottonseed meal, together with the minimum percentage of nitrogen to be contained therein, also the tax tags required by section 8 of said chapter 138, Laws of 1912.

Section 1, chapter 138, Laws of 1912, is as follows:

"That all manufacturers, jobbers, manipulators or sellers of commercial fertilizers, who offer to sell, or exchange in the state of Mississippi such fertilizer or fertilizing material shall first file each year or season with the state chemist and also with the commissioner of agriculture and commerce on forms to be supplied by them, the name of each brand of fertilizer or fertilizing material, or the name of the fertilizing material when no brand named is used to designate it, which they may desire to sell, either by themselves, their jobbers or agents, together with the name and address of the manufacturer, manipulator, or seller, the grade of the fertilizer, and also the guaranteed analysis thereof, stating in minimum percentages only the amount of water soluble phosphoric acid, citrate soluble phosphoric acid, available phosphoric acid, nitrogen, and potash which such fertilizer or fertilizing material is guaranteed to contain; provided that in castor pomace and cottonseed meal the percentage of nitrogen only shall be guaranteed.

"In bone meal, tankage, phosphatic slags or other products wherein the phosphoric acid is not available by the methods of analysis of the Association of Official Agricultural Chemsits of the United States, but which is or may become available after being applied to the soil, the phosphoric acid shall be guaranteed as total phosphoric acid, unless it be desired to guarantee water soluble and citrate soluble and available phosphoric acid, in which case the guarantee must be stated in the form above set forth. The fact that the purchaser waives the guaranteed analysis and the inspection as herein provided shall be no protection to the seller. *It is also provided that the*

*state chemist and the commissioner of agriculture and commerce shall have the power to refuse to receive or register the guaranteed analysis of any fertilizer under a name, brand, or trade-mark, which would be misleading or deceptive, or which would tend to mislead or deceive the purchaser as to the actual character of such fertilizer or fertilizing material.''* (Italics ours.)

The last sentence of this section furnishes the basis for the contention of the commissioner of agriculture that he is authorized to refuse the registration and the tags to the plaintiff in this case. Section 2 of this act, chapter 138, Laws of 1912, provides for the payment of a fee of five dollars. Section 3 of the act provides the form required to be printed on packages of the product. Section 4 provides the name of the brand and the percentage of the various constituent parts of the product, as do sections 5, 6, and 7 of the act. Section 8 provides for the tags. Section 20 of the act, chapter 138, Laws of 1912, is as follows:

"If any manufacturer, importer, jobber, firm, company or person shall offer or expose for sale or exchange any fertilizer, cottonseed meal, or fertilizing material without having attached to or furnished therewith the tax tags as required by this act, or who shall use the tax tags a second time, or use a counterfeit of such tax tags, or a tag not sold to him by the commissioner of agriculture and commerce, or who shall fail to submit annually a guaranteed analysis as required, or who shall fail to attach to each package the information required by section 4, or who shall state the grade, weight, or guarantee incorrectly on the package, or who shall sell a fertilizer containing hoof meal, horn meal, hair or leather in any form without making the fact known on the guaranteed analysis, or who shall impede or obstruct the duly appointed inspector in the performance of his duty, shall be guilty of the violation of this act, and, upon conviction thereof shall be fined not less than fifty dollars and not more than one hundred dollars for each offense.''

It will be noted that section 20, above set out, provides that a party who shall mislead or deceive by placing an incorrect guaranty on the package is liable to a fine of not less than fifty dollars nor more than one hundred dollars for each offense.

We think the act provides for a penalty to be imposed upon a party who fails to comply with the requirements of the statute, and that the commissioner of agriculture was without authority to refuse to grant the registration because of past violations on the part of the applicant of this section. The legislature did not provide for a refusal to permit the applicant to have registration because of past violations of the law. The court below was correct in holding that the *mandamus* should issue as prayed for in this case.

*Affirmed.*